UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TERRY L. GARNTO,

                Petitioner,

vs.                        Case No.  2:04-cv-390-FtM-29SPC

PATRICIA MEKUSKER, WARDEN

                Respondent.
_____

**OPINION AND ORDER**

**I.**

Petitioner, who is proceeding *pro se*, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1; Petition) pursuant to 28 U.S.C. § 2254.[1]  Petitioner challenges his state court judgment of conviction entered in the Twentieth Judicial Circuit Court in Lee County, Florida.  Petition at 2.  In compliance with this Court's Order, Respondent filed a Response (Doc. #21, Response) and submitted numerous exhibits, including the post-conviction motions filed by Petitioner and the transcripts from Petitioner's state court proceedings.  See Doc. #18; Exhs. 1-21 (not scanned on docket).  Petitioner filed a Reply (Doc. #19, Reply) to the Response.  Thereafter, the Court permitted Petitioner to file a "Supplemental Petition" (Doc. #24, Supplemental Petition).  In compliance with this Court's Order, Respondent filed

---

[1]Petitioner accompanied the filing of his Petition with a Memorandum of Law in Support of the Petition (Doc. #2; MOL).

a "Supplemental Response" (Doc. #28) and Petitioner was permitted to file a "Supplemental Reply" (Doc. #34).  This matter is ripe for review.

## II.

Petitioner was charged by Information of five counts: (count one) DUI manslaughter; (counts two, three, four) DUI with serious bodily injury; and (count five) DUI with property damage.  Exh. 6, Vol. I at 2; Response at 2.  After a jury trial, Petitioner was found guilty of all counts, with the exception of count two, of which he was found guilty of the lesser offense of DUI with bodily injury.  Exh. 6, Vol. III at 117.  On June 16, 2000, Petitioner was sentenced to life in prison for count one with concurrent sentences of 659 days for count two (credit for time served), 479 months on counts three and four, 659 days for count five (credit for time served).  Exh. 6, Vol. III at 119-134.

Petitioner filed a direct appeal with the assistance of counsel on November 28, 2000.  Exh. 1 at 1. On direct appeal, Petitioner raised two grounds:

> (1) whether the trial court erred in refusing to allow the defense to present their defense of duress or necessity to the jury; and

> (2) whether the trial court erred in ordering restitution in an indefinite amount for an undetermined time.

Id.  The State filed a brief in response.  Exh. 1 at 2. On August 1, 2001, the appellate court *per curiam* affirmed without a written

opinion. <u>Garnto v. State</u>, 793 So. 2d 944 (Fla. 2d DCA 2001); Exh. 1 at 5. Mandate issued August 23, 2001. Response at 2.

On April 11, 2002, Petitioner filed a *pro se* motion for post-conviction relief with the trial court pursuant to Rule 3.850, Florida Rules of Criminal Procedure. Exh. 7. Petitioner raised the following ten grounds of relief, some of which are duplicative, in his Rule 3.850 motion:

(1) ineffective assistance of counsel when counsel failed to develop a defense that Petitioner requested regarding the assertions that the driver of the other vehicle caused or contributed to the accident;

(2) ineffective assistance of counsel for failing to develop a contributory negligence defense against the driver of the other car (repetitious of ground one);

(3) trial court error in permitting State to be entitled to "legislatively created presumption of impairment";

(4) ineffective assistance of counsel in not allowing Petitioner to testify;

(5) ineffective assistance of counsel for failing to call witnesses;

(6) trial court error in admission of his blood and the blood alcohol tests as evidence (repetitious of ground three);

(7) ineffective assistance of counsel for allowing the blood evidence, discussed in ground 6, to be admitted as evidence;

(8) trial court error in granting the State's motion *in limine* to prevent the Defendant from asserting a defense of necessity or duress;

(9) ineffective assistance of counsel and trial court error involving sleeping juror;

(10) trial court error for not allowing him to raise the defense of necessity (repetitious of ground 8).

See id.   The post-conviction trial court summarily denied Petitioner's motion.   Exh. 8.   Petitioner appealed the trial court's decision.   Exh. 9. The appellate court affirmed the trial court's order without prejudice, noting that the Rule 3.850 motion before the trial court was facially insufficient because the allegations raised in the appellate brief concerning two grounds were not alleged in the trial court's post-conviction motion. Garnto v. State, 830 So. 2d 901 (Fla. 2d DCA 2002); Exh. 9 at 9. In particular, the appellate court ruled:

> Garnto claims that his defense counsel was ineffective for failing to call two exculpatory witnesses and for failing to protect Garnto's legal interests upon becoming aware of a sleeping juror.  In the sworn initial brief filed by Garnto in this court, he makes detailed allegations about the substance of these claims and the prejudice he suffered because of these failures. However, Garnto did not make the same allegations in either his rule 3.850 motion or the accompanying sworn memorandum of law.  In fact, the allegations in his motion and memorandum concerning these claims are facially insufficient.   It is only the allegations contained in his motion and memorandum that the trial court reviewed before denying the claims.  Therefore, we cannot consider the factual allegations contained in Garnto's sworn initial brief.

Garnto, 830 So. 2d 901, 902 (Fla. 2d DCA 2002); Exh. 9 at 10.

On December 15, 2002, Petitioner then filed an Amended *pro se* motion for post-conviction relief with the trial court pursuant to Rule 3.850 raising two grounds:

(1) defense counsel was ineffective for failing to call exculpatory witnesses; and

> (2) defense counsel was ineffective for failing to
> request a mistrial when a juror was asleep.

Exh. 9 at 12. The State filed a Response.   Exh. 9 at 13.
Petitioner filed a Reply.  Exh. 9 at 14.  The trial court denied
Petitioner's amended motion on April 7, 2003.  Exh. 9 at 15.

On May 28, 2003, Petitioner appealed the trial court's denial.
Exh. 9 at 17-18.  The State filed a Notice to the appellate court
that it would not file a brief unless directed to do so by the
appellate court.  Exh. 9 at 19.  The appellate court affirmed the
trial court's order without a written opinion.  Exh. 9 at 20.  On
March 30, 2004, mandate issued.  Exh. 9 at 21.

Petitioner then filed his federal habeas corpus petition on
July 9, 2004, raising three grounds.  On September 19, 2005,
Petitioner sought leave to file a supplemental petition to include
a fourth ground, which the Court granted.  The supplemental
petition was filed on December 14, 2005, and as directed by the
Court, a Supplemental Response and a Supplemental Reply were then
filed on September 12, 2008, and October 22, 2008, respectively.

## III.

### A.

Petitioner filed his Petition after April 24, 1996, the
effective date of the Antiterrorism and Effective Death Penalty Act
of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996).
Consequently, post-AEDPA law governs this action.  Penry v.
Johnson, 532 U.S. 782, 792 (2001); Davis v. Jones, 506 F.3d 1325,

1331, n.9 (11th Cir. 2007).   Neither party disputes the applicability of the AEDPA.

**B.**

The AEDPA imposes a one-year statute of limitations on § 2254 actions.   28 U.S.C. § 2244(d).   The statute of limitations that governs the filing of Petitioner's Petition and Amended Petition is set forth at 28 U.S.C. § 2244(d) and provides as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of  -
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Respondent acknowledges that the original Petition is timely filed, but contends that Ground Four in the supplemental petition is untimely. Supplemental Response at 6, 7.  In particular, Respondent points out that over a year elapsed, which was not tolled before Petitioner filed his request to supplement the petition. Id. at 7.  Further, Respondent argues that ground four is not entitled to the relation back doctrine because ground four does not relate to any of the claims in the original petition. Id. at 9.  In his Reply, Petitioner states that the Respondent's arguments are "well taken," and, therefore, he "will not press the arguments raised in . . . ground four of his supplemental petition."  Supplemental Reply at 1.  The Court construes Petitioner's Reply to be a voluntary dismissal of ground four.[2] Similarly, in his Supplemental Reply Petitioner states that he "will not press the arguments raised in ground three of his original petition." Supplemental Response at 1.  Thus, the Court grants Petitioner's voluntary dismissal of ground three. Consequently, the Court addresses only grounds one and two of the original Petition.

---

[2]Unlike the claims asserted in the Petition that stem from Petitioner's trial, ground four of the supplemental petition concerns whether the sentence imposed on Petitioner is illegal. See Supplemental Petition at 5.

## C.

A federal court may entertain an application for a writ of
habeas corpus from a state prisoner who claims his custody violates
the "Constitution or the laws or treaties of the United States."
28 U.S.C. § 2254(a).  Pursuant to 28 U.S.C. § 2254, a federal court
may grant habeas corpus relief <u>only</u> if the state court
adjudication:

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the Untied States; or

> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).  <u>See also</u> <u>Grossman v. McDonough</u>, 466 F.3d
1325, 1335 (11th Cir. 2006), <u>cert. denied</u>, 127 S. Ct. 2430 (2007).
Questions of state law are generally insufficient to warrant review
or relief by a federal court under § 2254.  <u>Estelle v. McGuire</u>, 502
U.S. 62, 68 (1991); <u>Cabberiza v. Moore</u>, 217 F.3d 1329, 1333 (11th
Cir. 2000).  Questions of state law are only reviewed to determine
whether the alleged errors rendered "the entire trial fundamentally
unfair."  <u>Carrizales v. Wainwright</u>, 699 F.2d 1053, 1055 (11th Cir.
1983).

A state court decision is "contrary to" the Supreme Court's
clearly established precedent if the state court applies a rule
that contradicts the governing law as set forth in Supreme Court
cases, or the state court confronts a set of facts that is

materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams v. Taylor, 529 U.S. 362, 412-413 (2000)); Stephens v. Hall, 407 F.3d 1195, 1202 (11th Cir. 2005). A state court decision does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent. Early v. Parker, 537 U.S. 3, 8 (2002); Parker v. Secretary, 331 F.3d 764, 775-76 (11th Cir. 2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court identifies the correct governing legal rule from Supreme Court cases but applies it to the facts of the particular inmate's case in an objectively unreasonable manner; or if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. Brown, 544 U.S. at 1439; Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000). The unreasonable application inquiry requires the state court decision to be more than incorrect or erroneous; it must be objectively unreasonable. Mitchell v. Esparza, 540 U.S. 12, 17-18 (2003); Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003); Price v. Vincent, 538 U.S. 634, 639 (2003); Woodford v. Visciotti 537 U.S. 19, 25 (2002). Depending upon the legal principle at

issue, there can be a range of reasonable applications. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 663-64 (2004). Thus, a federal court's review is generally not *de novo*, but requires a showing that the state court decision is objectively unreasonable. <u>Id.</u> at 665-66. If the Supreme Court has not issued a specific holding on the issue at hand, then the state court's decision is not contrary to or an unreasonable application of clearly established federal law. <u>Carey v. Musladin</u>, 549 U.S. 70 (2006).

Additionally, AEDPA requires the Court to presume that the state court's factual findings are correct, and the petitioner bears the burden of rebutting the presumption with "clear and convincing evidence." <u>Schriro v. Landrigan</u>, 127 S. Ct. 1933, 1940 (2007)(footnote omitted); § 2254(e)(1). <u>See also</u> <u>Miller-El v. Dretke</u>, 125 S. Ct. 2317, 2325 (2005); <u>Henderson</u>, 353 F.3d at 890-91. Where credibility is at issue, relief may only be granted if it was unreasonable for the state court to credit the testimony of the witness. <u>Rice v. Collins</u>, 126 S. Ct. 969, 974 (2006).

**D.**

If the grounds asserted warrant review by a federal court under § 2254, petitioner must still have given the State courts the opportunity to address the federal issues. A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A). This imposes a total exhaustion requirement in

which all the issues must have first been presented to the state courts.  Rhines v. Weber, 544 U.S. 269, 274 (2005).

AEDPA requires a state prisoner exhaust all available state court remedies, either on direct appeal or in a state post-conviction proceeding, thereby giving the state the opportunity to correct its alleged violations of federal rights.  See Baldwin v. Reese, 541 U.S. 27, 29 (2004).  The exhaustion doctrine requires that the petitioner "fairly present" his federal claims to the state courts in a manner to alert them that the ruling under review violated a federal constitutional right.  Duncan v. Henry, 513 U.S. 364, 365-366 (1995)(quoting Picard v. Connor, 404 U.S. 270, 275 (1971)).  Petitioner must present the same claim to the state court that he argues to the federal court.  McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005); Kelley v. Sec. Dept. of Corrections, 377 F.3d 1317, 1343-1344 (11th Cir. 2004).  As to ineffective assistance of counsel claims, a petitioner must have presented each instance of alleged ineffective assistance to the state court in such a manner that a reasonable reader would understand each claim's particular legal basis and specific factual foundation. Ogle, 488 F.3d at 1368; Kelley, 377 F.3d at 1344.

A district court is ordinarily required to dismiss a "mixed" petition, i.e., one containing both unexhausted and exhausted claims.  Pliler v. Ford, 542 U.S. 225 (2004); Rose v. Lundy, 455 U.S. 509 (1982).  However, when it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-

law procedural rule, a district court can consider the petition but treat those claims as procedurally defaulted. Ogle v. Johnson, 488 F.3d 1364, 1370 (11th Cir. 2007). Additionally, while under the AEDPA a federal court may not grant a habeas petition which contains unexhausted claims, it may deny such a petition. LeCroy v. Sec. Dept. of Corrections, 421 F.3d 1237, 1261 n.26 (11th Cir. 2005).

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001), cert. denied, 534 US. 1136 (2002). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, . . .." Smith, 256 F.3d at 1138.

A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error. House v. Bell, 547 U.S. 518, 537 (2006); Mize v. Hall, ___ F.3d ___, No. 07-10659, 2008 WL 2600625 (11th Cir. July 2, 2008). "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003). Constitutionally ineffective assistance of

counsel can constitute cause if that claim is not itself
procedurally defaulted. <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451-52
(2000). To show "prejudice," petitioner must show that there is at
least a reasonable probability that the result of the proceeding
would have been different. <u>Henderson</u>, 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a
procedurally defaulted claim, without a showing of cause and
prejudice, if such review is necessary to correct a fundamental
miscarriage of justice. <u>House</u>, 547 U.S. at 536; <u>Edwards</u>, 529 U.S.
at 451; <u>Henderson</u>, 353 F.3d at 892. This exception is only
available "in an extraordinary case, where a constitutional
violation has resulted in the conviction of someone who is actually
innocent." <u>Henderson</u>, 353 F.3d at 892. <u>See also</u> <u>House</u>, 547 U.S.
at 536-37 (prisoner asserting actual innocence must establish that,
in light of new evidence, it is more likely than not that no
reasonable juror would have found him guilty beyond a reasonable
doubt).

**IV.**

**Ground One**

In ground one, Petitioner argues that the trial court erred in
refusing to allow him to present his "duress" or "necessity"
defense to the jury. Prior to trial, the trial court granted
without prejudice the State's motion *in limine* to exclude evidence
of Petitioner's assistance in a drug task force, or of any threats

allegedly made or communicated to Petitioner at or before the time of the incident from which the charges stem.  Petition at 5; Doc. #2 at 3; Exh. 6, Vol. I.  During trial, the court denied defense counsel's request for a jury instruction on duress or necessity. Petition at 5.  Petitioner argues that the trial court violated his due process rights by not allowing him to put on the defense that he drove a vehicle with an illegal blood-alcohol content out of necessity or duress because his counsel proffered evidence satisfying the State's criteria for the necessity defense.  Doc. #2 at 2.  Petitioner asserts that he had been acting as a "confidential informant for a drug task force" and was drinking with "targets" of the ongoing investigation to reestablish friendships with them.  Id. at 4.  Petitioner maintains that he felt threatened by one of the targets and felt like he had to "get out of the area immediately."  Id. at 5.

Respondent first argues that the claim is not one for federal habeas corpus review, rather the decision whether to allow an affirmative defense of duress or necessity is a matter of state law and is within the sole province of the trial courts.  Response at 8.  Second, Respondent argues that this claim is procedurally defaulted because Petitioner did not raise a federal constitutional issue on his direct appeal regarding his claim that the jury instruction of necessity or duress should have been presented to the jury.  Id. at 9.  Respondent further argues that Petitioner does not establish an exception to the procedural default, that is

-14-

cause for the default and actual prejudice, a fundamental miscarriage of justice, or that he is actually innocent. Alternatively, Respondent argues that "as a matter of Florida law, [Petitioner] was not entitled to present the proposed defense to his charges based on the proffered evidence." Id. at 11. Last, Respondent argues that Petitioner cannot show the state's decision was contrary to or an unreasonable application of established Supreme Court precedent." Id. at 12.

In his Reply, Petitioner argues that he did raise a federal constitutional issue on direct appeal concerning ground one and as such properly presented this claim to the state court. Reply at 2. Petitioner further argues that sufficient evidence was proffered during the trial to support a jury instruction for necessity or duress. Id. at 3. Petitioner avers that he satisfied the State's five elements of duress and argues that Respondent is incorrect in claiming that Petitioner had to produce evidence of an "'actual' verbal or physical threat rising to imminent threat of death or great bodily harm." Id. at 4. Rather, Petitioner argues the first element consists of whether he "reasonably believed" that his life was in danger. Id.

Upon review, Petitioner raised the argument concerning the trial court's error in not allowing the defense of necessity or duress on direct appeal, but only as a state law claim. Exh. 1 at 1. Contrary to Petitioner's assertion that he cited a federal constitutional case in footnote 4 of page 9 of the direct appeal,

Reply at 2, Petitioner did not raise any federal constitutional issues when he raised this claim of trial court error on direct appeal, nor did he provide any information to suggest to the state courts that he was raising a federal issue. <u>See</u> Exh. 1 at 1 (raising this claim in matters of state law only); <u>Jimenez v. Sec. Dept. Corrections</u>, 481 F.3d 1337, 1342 (11th Cir. 2007). Therefore, the state courts were not alerted to a federal constitutional issue with this claim; and, as such Petitioner failed to exhaust his federal claim.

Moreover, Petitioner would be barred from raising his federal constitutional claim before the state court. Florida law procedurally bars new claims or claims that have already been raised in prior petitions when "the circumstances upon which they are based were known or should have been known at the time the prior petition was filed." <u>Johnson v. Singletary</u>, 647 So. 2d 106, 109 (Fla. 1994). Petitioner does not demonstrate cause for the default and prejudice as a result of the alleged federal violation, or demonstrate that the failure to consider the claim will result in a fundamental miscarriage of justice. As such, ground one is procedurally defaulted and Petitioner is not entitled to relief on this claim.

**Ground Two**

In ground two, Petitioner argues that his defense counsel provided ineffective assistance during trial when he failed to call two exculpatory witnesses: Dr. Rick Beteh and Mary Harper. Petition

-16-

at 6; Doc. #2 at 10.   Petitioner states that he "insist[ed]" that counsel call these witnesses.   Doc. #2. at 13. Petitioner notes that in defense counsel's opening statement, counsel argued that the defense would cast doubt on the reliability and trustworthiness of the Petitioner's blood-alcohol test results.   Doc. #2 at 10. Petitioner argues that at trial, an expert for the State testified that a blood sample stored in an elevated temperature, as Petitioner's sample was stored, would likely change the alcohol concentration by decreasing it.   Id.   Petitioner argues that Dr. Bateh was prepared to testify that the alcohol content in a blood specimen stored at an elevated temperature, would cause the alcohol concentration to be elevated.   Id.   Another witness for the State, Chris Hall, a medical technologist, testified that the State used an "abbot axsym" analyzer to test the level of alcohol in Petitioner's blood sample.   Id.   Also, contrary to the medical technologist for the State, Petitioner argues that Dr. Bateh would have testified that the Florida Department of Law Enforcement was not authorized pursuant to the Florida Administrative Code to use the "axsym analyzer" on a blood specimen.   Id. at 11.   Further, this defense expert would have testified that the abbot axsym test required the use of an anti-coagulant, and it was not established during trial that the anti-coagulant was used in this instance. Id.

With regard to Mary Harper's purported testimony, Petitioner argues that she would have testified that the beer cans found in

the back of Ms. Harper's vehicle did not belong to Petitioner. Id.
at 13.   Instead, Harper would have testified that the beer cans
belonged to her and other passengers in the car from the night
before.   Id.   Petitioner argues that despite the fact that Harper
is   Petitioner's   wife,   the   probative   value   of   the   evidence
outweighed the prejudicial effect created by their relationship.
Id.   Petitioner asserts that Harper's testimony would have answered
the   "unanswered   question   as   to   where   the   beer   cans   came   from,
thereby   bolstering   the   Petitioner's   position   that   he   was   not
drinking to the point of impairment on the day of the accident."
Id. at 15.   Petitioner argues that the fact that counsel did not
call these witnesses satisfies prong one of the Strickland test.
Id. at 14.

     In Response, Respondent notes that Petitioner's position does
not   suggest   that   counsel   was   unaware   of   these   two   witnesses.
Response at 29.   With regard to the doctor's testimony, Respondent
notes that according to Petitioner's Rule 3.850 motion, defense
counsel told Petitioner that the doctor would not be called because
his testimony would have no probative value considering that the
substance of the doctor's testimony had already been brought to the
jury's   attention.   Respondent   refers   the   Court   to   the   trial
transcript, noting that counsel elicited the same testimony from
Marc   Bruzdziak.   Response   at   31.   With   regard   to   Harper's
testimony, Respondent argues that Petitioner "fails to show no
reasonable competent attorney could forego putting on Harper, whose

-18-

bias could be shown, having a relationship with Petitioner." <u>Id.</u> at 31.  Further, Respondents argue that the jury had already heard compelling evidence from the blood specimen indicating that Petitioner had used intoxicants; thus, presenting Harper's testimony that the beer cans in car belonged to her for purposes of supporting the theory that Petitioner was not driving while impaired may have caused an adverse jury reaction.  <u>Id.</u>  Last, Respondent argues that Petitioner cannot establish prejudice for failing to call Harper as a witness in light of the eyewitness testimony regarding the manner of his driving and other evidence of his impairment.  <u>Id.</u> at 31.

Because an ineffective assistance of counsel claim is a mixed question of law and fact, the statutory presumption of correctness of the state court's findings of fact does not apply to determination of the ineffective assistance of counsel. <u>Rolling v. Crosby</u>, 438 F.3d 1296, 1299 (11th Cir.), <u>cert. denied sub nom. Rolling v. McDonough</u>, 126 S. Ct. 2943 (2006); <u>Parker v. Head</u>, 244 F.3d 831, 836 (11th Cir. 2001).

In <u>Strickland v. Washington</u>, 466 U.S. 688 (1984), the Supreme Court established a two-part test for determining whether a convicted person is entitled to habeas relief on the ground that his or her counsel rendered ineffective assistance.  A petitioner must demonstrate that his or her counsel's performance was deficient, i.e., fell below an objective standard of reasonableness under prevailing professional norms; and that the counsel's

deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 687-88. "Without proof of both deficient performance and prejudice to the defense, . . . it [can] not be said that the sentence or conviction 'resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable,' and the sentence or conviction should stand." Bell, 535 U.S. at 685 (internal citation omitted) (quoting Strickland, 466 U.S. 668, 687 (1984)).   With regard to the performance component of Strickland, a petitioner must provide factual support for the contentions that counsel's performance was constitutionally deficient.   Smith v. White, 815 F.2d 1401, 1406-07 (11th Cir. 1987).  "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."   Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006), cert. denied, 127 S. Ct. 619 (2006). To show counsel's performance was unreasonable, a petitioner must establish that "no competent counsel would have taken the action that his counsel did take."   Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted).   A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.   Strickland, 466 U.S. at 689-90.   A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct."

Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000)(quoting Strickland, 466 U.S. at 690).  "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 125 S. Ct. 2456, 2462 (2005) (citations omitted).

To show prejudice, a petitioner must show more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." Strickland, 466 U.S. at 693.  If counsel's performance falls "below the line of reasonable practice, there is a further question about prejudice, that is, whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Rompilla, 125 S. Ct. at 2467 (citation omitted).  A "reasonable probability" is defined as a probability sufficient to undermine the outcome." Id.  Prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable.  Lockart v. Hill, 506 U.S. 364 (1993).

Upon review of the record, in Petitioner's first Rule 3.850 motion, Petitioner argued that defense counsel provided ineffective assistance by not calling these two witnesses, Exh. 7, which the trial court summarily denied, Exh. 8.[3]  In denying this ground, the trial court wrote:

---

[3]It appears, however, Petitioner raised a different argument concerning the witnesses' testimony.

> [Petitioner] asserts that counsel was ineffective for
> failing to call an expert witness appointed on the
> Defendant's behalf regarding blood alcohol levels. Given
> from the transcript attached to [sic] the Defendant's
> blood test result was admitted into evidence and that
> evidence revealed a blood alcohol above the legal
> presumptive limit, this Court has no difficulty seeing
> why the expert did not testify.  The testimony of the
> other witnesses asserted by the Defendant are collateral
> and irrelevant in this case of Ms. Harper and also
> irrelevant and inadmissible as to the testimony of Ms.
> Garrett, who the Defendant apparently could have provided
> a defense of necessity to explain the Defendant's driving
> while impaired.

Exh. 8 at 3.  Petitioner appealed the trial court's decision to the

appellate court, Exh. 9 at 9, and the appellate court affirmed the

trial court, writing an opinion to comment on this ground as

discussed above, Exh. 9 at 10.  Petitioner raised this ineffective

assistance of counsel claim in his Amended 3.850 motion.  Exh. 9 at

12.  Again, the trial court denied relief on this ground, stating:

> The Response and portions of the record attached refute
> the Defendant's claim that counsel was ineffective for
> failing to call expert witness Dr. Rick Bateh as a
> witness where all of the matters to which he would have
> testified were brought out by cross-examination of [the]
> state witnesses.  Counsel was also not ineffective for
> failing to call the Defendant's wife as a witness where
> all of the testimony she would have given was brought out
> by cross-examination of state witnesses.

Exh. 9 at 15.  Petitioner appealed the decision and the appellate

court *per curiam* affirmed the trial court.  Exh. 9 at 20.

Upon review of the federal habeas petition, the Court finds

that the state court's determination that counsel did not provide

ineffective assistance is not contrary to, nor an unreasonable

application of Strickland.  With regard to counsel's performance,

counsel explained to Petitioner that he would not call the doctor as a witness because that testimony was already elicited from the State's witness on cross-examination. Exh. 9 at 15. The trial transcript clearly shows that on cross-examination, Petitioner's attorney elicited testimony from the State's witness that it was possible, if Petitioner's blood specimen was exposed to elevated temperatures (i.e. not refrigerated), for the blood sugars to turn into alcohol and thus raise the blood-alcohol reading. Exh. 6, Vol. II at 377. Additionally, the State's witness testified that the anticoagulant must have been added based on the fact that the blood was not visibly clotted. Id. at 374. Clearly it is not deficient performance for counsel to decide not to put a witness on the stand when the purported testimony from that witness was already presented to the jury, as reflected on the record. With regard to Petitioner's argument that Harper, his wife, would have testified that the beer cans were not Petitioner's, to support Petitioner's theory that he was not driving while impaired, the blood-alcohol test results presented to the jury evidenced that Petitioner's blood-alcohol level measured approximately .16, three hours after the time of the accident.[4] Petitioner has not shown that counsel's performance was unreasonable under prevailing professional norms for not having Harper testify. Interestingly,

---

[4]The witness testified that the hospital's blood specimen taken after the accident measured a blood-alcohol content ranging from .18 to .22. Exh. 6, Vol. II at 359.

Petitioner argues that Harper's testimony would have supported the theory that he did not drive impaired.  However, Petitioner at the same time argues that the trial court erred in not allowing the defenses of necessity or duress be presented to the jury, i.e., he drove the vehicle while impaired out of necessity because he felt threatened by a target of an ongoing drug investigation.

The Court need not address the prejudice prong of the Strickland test if the performance prong is not satisfied.  See Strickland, 466 U.S. at 697; Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000). The Court, nevertheless, also finds that the record does not show that but for counsel's failure to call these two witnesses, the outcome of the case would have been different. The jury heard testimony from numerous witnesses who testified as to how they saw Petitioner driving the vehicle coupled with evidence of his impairment through the blood-alcohol tests.  See e.g. Exh. 6, Vol. II at 82-108.  Petitioner is denied relief with regard to ground two.

ACCORDINGLY, it is hereby

**ORDERED:**

1.  The Court construes Petitioner's Supplemental Reply (Doc. #34) to be a motion for voluntary dismissal of ground three in the original petition and ground four in the supplemental petition, and **grants** Petitioner's voluntary dismissal of grounds three and four.

2.    The Petition for Writ of Habeas Corpus is otherwise **denied.**

3.    The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this  27th  day of October, 2008.

JOHN E. STEELE
United States District Judge

SA: alj
Copies: All Parties of Record